and we are now ready to move on to our final case, case number six for today United States against Fernelly Llanos, appeal number 21-2751. So Mr. Schwarzbach, if you're ready, we are ready for you. Please the court. Your Honors, my name is James Schwarzbach and I represent the defendant appellant Fernelly Llanos in this matter and the crux to this case was initial fundamental unfairness that occurred in the initial prosecutions by the US Attorney's Office for the Northern District of Illinois which then created an unfair scenario in the sentencing of the defendant in 17 CR 509. I am appealing the decision of the court on the violation of supervised release in the additional 30 months of consecutive sentencing that was given by the district court on September 9, 2021 after the July 13, 2021 sentencing in 09 CR 373 where the defendant was given and is currently serving 120 months. So just to start on common ground though, when somebody commits another crime while that individuals on supervised release, the government is entitled if it wants to to prosecute that crime and also to revoke supervised release and that seems to be what happened here and in particular when Judge Guzman looks at what Judge Wood had done and you look at what the guidelines range was for the sent for the offense in front of her it was 262 to 327. She pulls it all the way on to 120 the mandatory minimum and she says at one point you know whether it was one offense or two offense you know this is this is what I'm doing so yes he does get the the extra 30 for the revocation of the supervised release but why why is this so unusual and why is it out of line for the judges to have handled things this way and I gather we're focusing on Judge Guzman's extra 30. Yes your honor and judge we have to go back to a ruling that Judge Guzman made in this very case on May 26 2011 and that brings us back to the nature in the unusual circumstance that both Judge Guzman noticed on May 26 2011 and Judge Wood observed and commented on at length in dropping below the 262 to 327 guidelines because those guidelines were unfair in the first place based on the manner of the prosecution. It was a big discount that she gave in it was a discount that should never have had to have been given. That's the problem in this case. In 2007 CR 473 the defendant was charged by the US Attorney's Office by one arm of them in 2007 for acts and conduct that occurred in the distribution of narcotics and the defendant is guilty of all this. That's not the issue here. He was charged for an April to July 2007 distribution. He was convicted in 2008 and he was given 70 months in the Bureau of Prisons and was in the Bureau of Prisons when the same US Attorney's Office charged him for conduct of overlapping time without intervening arrest and for the purchasing of narcotics that occurred between 2006 and May of 2007. Mr. Schwartzbeck, I think we do understand the interplay between the 07 and the 09 cases and what happened. I'm particularly trying to understand your argument. It looks like Judge Wood took all that into account knocked him down to 120. Is your argument that he really shouldn't have been higher than even 70 which is what Guzman then knocks him down to later in the underlying 09 case and so that even the 120 was inflated and so then you wanted Judge Guzman on the supervised release revocation to acknowledge that gap between 70 and 120. What what was your principal argument in mitigation for Mr. Judge Guzman? Thank you. Your Honor, our principal argument was that Judge Guzman himself recognized on May 26, 2021 in correcting that portion of the sentences that he could which was the concurrent sentences and he gave the relevant conduct was sufficient that these could have and should have been one conspiracy. That is extraordinarily important because it placed by the by the courts still having to go by the law in saying that he had two separate convictions when he should have been only charged with one conspiracy and had only one criminal conviction meant that he had higher criminal history points, he had higher category, he was categorized as a six, category six, he had minimum bottoms on him because when he gets to Judge Guzman for the supervised release he's category three. Judge Guzman was operating on the 09 cases a category three in a grade A criminal offense because Judge Guzman was taking him as he was in 09 but the fact was Judge Guzman was the judge that he had originally determined the initial unfairness in a determined there was the law of the case at that point. Judge Wood in a very balanced decision realized that. Now the U.S. Attorney's Office had the ability because of the initial discretion the U.S. Attorney's Office had in how they were prosecuting this man to go up to 327 months between 262 and 327 and Judge Wood you know and I'm trying to answer your question your honor by because your question can only be answered by me explaining how I believe that Judge Guzman was not reasonable under our standard of review in looking at how Judge Wood had looked at this situation. Judge Wood saw this for what it was. She actually looked at Judge Guzman's May 26, 2011 determination of the relevant conduct that these two criminal offenses which had to be considered separately and therefore raising category, raising criminal history and putting this as a career offender put this man up at 262 to 327 years. It was blatantly unfair and she said so. She put him down. Let me ask it a different way. At the supervised release revocation hearing what do you argue Judge Guzman should have done differently? Judge Guzman should have made a reasoned and again it goes to the judicial review we give broad discretion on violations. There's no argument that there is tremendous discretion given in the violation of supervised release and that is what in fact occurred here but that doesn't mean that there's no judicial review. Judge Guzman had to address my principal argument. That is the Vietas Miranda case that is the Cunningham case. He did not address the principal argument of the initial unfairness that put the defendant up at that 120 month limit. So were you arguing for a sentence of zero as a supervised release violation punishment or something less than that? I would love to know your direct answer to this question. My direct answer is because of what the United States government did in 2007 and 2009. The defendant was facing much larger sentence. I know all about the background. It should have been zero. So the bottom line of the supervised release proceeding should have been what? Zero months extra imprisonment? Ten months? You know he gets 30 which is the bottom of the recommended range. The guidelines were 30 to 37 but Judge Guzman could very well have stated and reasonably stated and should have been reasonably stated that the 120 months on the predicate of offense that was given by Judge Wood two months earlier was in fact a reasonable sentence. We believe that that was reasonable. Counsel, having done a bunch of these hearings myself in a district court over a ten-year period, when a district judge is faced with a violation of supervised release and the question that I would ask is well did the judge in the underlying case consider the fact that this crime was committed while he was on supervised release, right? And if the answer is yes then there's some weight I give to that and if the answer is no then that's something I consider as well, right? Here from the transcript seems like that's exactly what Judge Guzman did. He asked himself well so the defendant was on supervised release. There was a court order that required him to meet certain obligations. He violated that. He admitted he violated that. So the question before Judge Guzman was how much should he be sentenced to? And then he I think reasonably asked well did Judge Wood think about that when she came to a 120 month consideration? He found that Judge Wood did not. So he said okay well I believe that he needs some sort of punishment for that additional violation. I'm going to give him 30 months. Why isn't that a completely reasonable approach given the record that was before him? Because your honor there was a misreading by Judge Guzman of the actual transcript. On page 71 and page 72 of the transcript of proceedings on July 13th 2021, Judge Wood states yes this man was on supervised release. So she knew, she had a record that she was aware of the supervised release but reading her remarks as a whole Judge Guzman understood this to say and I have to say in my view reasonably understood it to say even though that's a factor actually what's driving my sentencing to decision is the underlying offense you're incorrigible whatever you know but and so I'm just going to leave it 120 and I'm you know in the exercise of my 3553A discretion this is what it's going to be so he finds that she knows that it's there it's not that she's oblivious but it's not a driver of the sentence and he then proceeds as Judge Lee said. And Judge thank you very much I noted I'm out of time I'll only respond by saying. You can respond to that and then we'll wrap up. Thank you. Judge I'll simply say that he did not respond under the law as required by this Neuroscope of Review to our principal argument in that regard. Okay. Thank you. I do ask that you overrule the court. Ms. Moran. Good morning may it please the court. My name is Kirsten Moran and I am appearing today on behalf of the United States. We're requesting today that this court affirm Mr. Llanos' sentence. In the underlying sentencing proceedings for Mr. Llanos' supervised release violation Judge Guzman took careful steps to take into account Mr. Llanos' supervised release violation when Judge Wood imposed her sentence. And we know this because Judge Guzman read and evaluated Judge Wood's transcript, asked questions of the government regarding Judge Wood's thought process, and called her analysis thorough and balanced. Judge Guzman clearly acknowledged that he was aware Judge Wood knew about the supervised release violation during the sentencing. It wasn't lost on Judge Wood that this had been committed. This underlying offense in the 17 CR case had been committed. Where do you where do you see Judge Guzman addressing what Mr. Schwarzbach says is Mr. Llanos' principal argument which is that the 120 was itself too high, too unfair, and therefore he wanted Judge Guzman to take that into account in the revocation sentencing. Where in Judge Guzman's brief remarks do you see that argument addressed? When Judge Guzman discusses the thorough and balanced findings in Judge Wood's sentencing, he notes the analysis that Judge Wood gave, says that he's considered it, it's thorough and balanced, but then pivots to his consideration and his evaluation of what's at issue here. And his evaluation is the breach of trust from this supervised release violation. It's not the underlying criminal offense that Judge Guzman was responsible for the violation. I'm not I'm not asking you what Judge Guzman was focusing on. I'm asking you where Judge Guzman addressed what Mr. Schwarzbach says his principal argument is. So your answer is it's in that brief reference to Judge Wood had a fair, thorough, balanced approach here. Yes, Judge Guzman does address several times Judge Wood's reasoning in the conversations with the government, the back-and-forth with the government, and where he does address how he evaluated Judge Wood's own analysis in imposing a sentence. And with respect to, again, the level of delineation of knowledge between what Judge Wood knew and what Judge Guzman was able to interpret, this analysis was appropriate because Judge Guzman and Judge Wood, again, they were evaluating these two separate violations, Judge Wood looking at the underlying criminal conduct and Judge Guzman evaluating the violation of his own supervised release order. And I briefly wanted just to note that the procedural challenges such as this one, they are evaluated under a highly deferential standard, the narrowest judicial review of judgments that this court knows, and as long as this sentence is not plainly unreasonable, that it should be affirmed. And with respect to just Judge Wood and Judge Guzman's evaluation of the supervised release violation, that actually was not the end of Judge Guzman's assessment of what occurred and what prompted the 30 month sentence. As Judge Guzman's sentencing transcript shows, after the discussion of Judge Wood's assessment of the supervised release violation, and in more generally, considering the underlying conduct, Judge Guzman then goes on to consider other factors, including the 3553A factors. He never actually says that's what he's doing though, does he? I don't think he mentions 3553A. Judge, I don't believe he explicitly references the statute. He does go through history and characteristics, the nature and circumstances of the offense, the need for deterrence, all hallmarks of the 3553A factors that district court judges are uniquely familiar with. And in fact, also reference the defendant's elocution, the arguments that the defendant had made in mitigation, and then also the need, again, for deterrence, talking about the blatant disregard for the court's supervision and the defendant's violation of that, which again, differentiates what Judge Guzman was doing in his supervised release proceeding versus what Judge Wood was doing in her sentencing proceeding in the 17CR case. The sentence provided by the district court here, this 30 months, this was within the guidelines range. As Your Honor noted, it was in fact the lowest end of the guidelines range, and as such, the district court was only required to provide a very concise explanation of reasons here. The district court here more than satisfied that requirement. Judge Guzman evaluated both what occurred in the underlying 17CR case with Judge Wood, then went on to assess the 3553A factors, and then decided on this 30 month sentence, looking into the low end, again, of the guidelines range. If there are no further questions, the government asks this court to affirm Mr. Yannas' sentence. All right, I see none, so thank you very much. I'll give you one final minute, Mr. Schwartzbach, if you would like to use it. Wait till you get up to the podium. Your Honor, I'll only address briefly some of the arguments that my colleague just indicated. With regard to the 3553A factors, we do know that the standard of the burden on this very limited inquiry is the reasonableness and that we look, number one, to whether or not the 3553A or B factors, in fact, in this case, were utilized. I think it's Article 7 of the policy guidelines, but we also look independently at my primary argument and whether it was addressed. But I do want to address what counsel was talking about briefly, and if we look at page 13 of 15, which is document 148, which is in fact Judge Guzman's statement, when he says, he says, I've read the transcript of proceedings, and that begins on page 12 of line 21, and he ends on page 13, line 15, having talked about Judge Wood having given this 120-month sentence, he says, for that reason, I'm going to impose another 30-month sentence. For that response to the primary argument in that. Thank you. All right, thank you very much. I believe you were serving by appointment, is that right, Mr. Schwartzbach? Yes. By court appointment. We thank you very much for your efforts on behalf of your client and the assistance to the court. Thanks as well to the government. The court will take the case under advisement. We will be in recess.